UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

H19 SUTTON LEASING, LLC,

        Plaintiff,                Case No.

vs.

DAVID BALDWIN, and EMPIRE
CONTRACTING GROUP LLC,

        Defendants.

---

Jennifer K. Green (P69019)
Clark Hill PLC
151 S. Old Woodward Ave., Suite 200
Birmingham, MI 48009
(248) 988-2315
jgreen@clarkhill.com
*Attorneys for Plaintiff*

---

### PLAINTIFF H19, INC.'S
### VERIFIED COMPLAINT AND JURY DEMAND

Plaintiff, H19 Sutton Leasing, LLC ("H19"), by it counsel, Clark Hill PLC, for its Verified Complaint against Defendants David Baldwin ("Baldwin") and Empire Contracting Group, LLC ("Empire") (together with Baldwin, "Defendants") for claim and delivery, specific performance, monetary damages and/or injunctive relief, states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff H19 Sutton Leasing, LLC ("H19") is a Delaware limited

1

liability company with its principal place of business located at 3555 E. 14 Mile Rd., Sterling Heights, MI 48310.

2. Defendant Baldwin is an individual residing at 15838 Poling Road, Florence, Indiana, 47042.

3. Defendant Empire is, upon information and belief, a Ohio limited liability company with its principal place of business located at 10390 Taconic Terrace, Cincinnati, Ohio 45215, with its sole member being Baldwin an individual residing at the above-stated address.

4. For diversity purposes, H19 is a citizen of Delaware, and none of the Defendants are citizens of Michigan.

5. The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and by reason of the complete diversity of citizenship of the parties.

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a).

## GENERAL ALLEGATIONS

**A. The Parties' Business Relationship**

7. Defendants leased a 2020 Dodge Ram 1500 STL Quad, VIN No. 1C6SRFJT1LN374996 (the "Vehicle") from Sutton Leasing, Inc., a company formerly headquartered in Michigan that specialized in vehicle fleet management,

2

including vehicle acquisition and financing.

8. On May 7, 2021, H19 purchased substantially all the assets of Sutton Leasing, including the Defendants' lease for the Vehicle.

9. Sutton Leasing was the title owner of the Vehicle, and title passed to H19 as part of the sale transaction on May 7, 2021.

10. Upon information and belief, Defendants operate a general contracting business in Ohio.

**B.    Key Terms of the Parties' Master Lease Agreement**

11. On September 3, 2020, Defendants executed a Vehicle Lease Agreement with Sutton Leasing, and this lease was later purchased by H19 (hereinafter the "Lease Agreement"). (Ex. A, Lease Agreement).

12. The Lease Agreement was executed by Baldwin. *Id.*

13. Under the terms of the Lease Agreement, H19, as the lessor, agreed to lease "Units" (defined as "cars, trucks, and industrial equipment") to Defendants, as the lessee, in exchange for payment.

14. All vehicles, or Units, leased by H19 are governed by the Lease Agreement's terms. *Id.* at ¶ 3 (noting the leases of "[a]ll Units shall be subject to the provisions of this Agreement and the Leased Unit Quotation").[1]

---

[1] The Lease Agreements uses the term "Unit" but that term will be interchangeably with "vehicles" throughout this complaint.

3

15. Ownership of (and title to) the Units does not transfer to lessee and the lessee does not "acquire any right, title, or interest whatsoever, legal or equitable, in or to such Unit." *Id.* at ¶ 21(f).

16. H19 also retains the right to access and/or inspect any Unit at any time during the lease term. *Id.* at ¶ 21(i) ("Lessor shall have free access and right of inspection of such Unit and the premises where it is kept and maintained.").

17. Defendants, as the lessee, were required to "inform Lessor [H19] of any change in the location in which a Unit primarily is operated and, on request, shall provide Lessor with data concerning the use and operation of such Unit." *Id.* at ¶ 11(b).

18. Under the terms of the Master Lease Agreement, Car Champs, as the lessee, was contractually-responsible to "pay all operating costs, expenses, fees, and charges incurred in connection with Units, including without limitation, all such costs, expenses, fees and charges with respect to licensing, inspections, gasoline, fuel, oil, grease, repairs and maintenance . . . related to the custody or operation of Units, and all administrative and service fees[.]" *Id.* at ¶ 10.

19. In addition, the Lessee is contractually-required to "maintain" each Unit and to ensure use of the Unit is performed "only in a careful manner" including conducting all "maintenance and other procedures necessary for maintaining in effect any manufacturer's warranty[.]" *Id.* at ¶ 11.

20. The lessee is also responsible for maintaining proper insurance. *Id.* at ¶ 17.

21. Upon termination of the lease of a Unit, if there is a deficiency, the lessee must pay the deficiency balance to the lessor (*i.e.*, H19). *Id.* at ¶ 15.

22. Events of default include, *inter alia*, the lessee's failure to make any payment within ten days; if H19 deems itself "insecure" for any reason; if the lessee dissolves, liquidates, "suspends usual business activities", or any act amounting to a "business failure" occurs; or if the lessee otherwise breaches any of the terms and conditions of the Master Lease Agreement and fails to remedy the breach within ten days. *Id.* at ¶ 16(a).

23. In the event of a default, the lessor (H19) has the right to immediately retake possession of the Units without prior notice. *Id.* at ¶ 16(b) ("If a default by Lessee occurs, Lessor shall have the following rights . . . Lessor shall have the option, without prejudice to other remedies legally available to it and without notice to Lessee to take possession of and remove all Units, with all equipment, instruments and accessories thereon and all repairs thereto, Lessee grants Lessor the right to enter any premises on which any Unit may be kept in order to repossess and remove such Unit.")

24. The Lessee's entire balance is also due and payable upon an event of default, as well as any additional payments due and owing "such as collection costs

and attorney's fees". *Id.* at ¶ 16(b)(iii), (v).

25. The Master Lease Agreement also contains a Michigan choice of law clause. *Id.* at ¶ 21.

**C.  Defendants Numerous Breaches of the Master Lease Agreement & Refusal to Relinquish the Vehicles to H19**

26. It is unknown if the Defendants have permitted necessary insurance to lapse, in violation of the Master Lease Agreement.

27. Defendants have also failed to ever make a single payment.

28. It is unknown if the Empire Contracting is still conducting active business; a private investigator hired by H19 drove by the business address and it appeared to be abandoned with no activity or personnel.

29. H19 does not know the exact location of the Vehicle; as a result, it is unknown if Defendants have adequately maintained the Vehicle or whether it is being safely being stored.

30. Due to the fact that Defendants have failed to properly report the location of the Vehicle as required by the Master Lease Agreement, H19 will be unable to repossess its Units without an order of specific performance requiring Defendants to disclose the location of the Vehicle.

31. H19's counsel attempted to contact David Baldwin at the phone numbers identified by him on his lease application but he could not be reached.

32. H19 also sent a demand letter in which it informed him he was in breach

6

of the Lease Agreement, demanded that he immediately cure the payment default, or voluntarily relinquish the Vehicle; Defendants ignored the letter. (Ex. B, Demand Letter).

33. Given the current situation, H19 has deemed itself "insecure", which is a separate event of default under the Master Lease Agreement.

34. Defendants currently owe $64,816.22 for its fleet, not including attorney fees and additional costs that may arise in connection with repossessing the Vehicle, and Defendants must immediately relinquish control over the Vehicle to permit H19 to repossess it.

35. In May 2021, H19 retained a private investigator to attempt to locate the Vehicle at the business address for Empire Contracting as well as the personal residence of Defendant Baldwin, but the Vehicle could not be located at either address.

36. Despite the fact that the Master Lease Agreements expressly state that the lessee must provide access to the Vehicle and must voluntarily relinquish the Vehicle upon default, Defendants have not turned the Vehicle back in or permitted access to the Vehicle.

37. In fact, the private investigator hired by H19 was chased away from the Defendant's property by a person who left the home, got into a vehicle, and pursued the investigator for several miles.

## COUNT I – BREACH OF CONTRACT

38. H19 incorporates by reference and reasserts here the allegations contained in the above paragraphs.

39. The Defendants have entered into a Master Lease Agreements with H19.

40. Under the Master Lease Agreement, H19 agreed to lease a Vehicle to Defendants in exchange for payment.

41. Defendants have repeatedly breached numerous provisions of the Master Lease Agreements, including but not limited to: (i) failing to make a single lease payment at any point in time; (ii) not permitting access to the Vehicle and not voluntarily relinquishing the Vehicle upon default; (iii) failing to properly report the location of the Vehicle in violation of Paragraph 11(b) was required to "inform Lessor [H19] of any change in the location in which a Unit primarily is operated and, on request, shall provide Lessor with data concerning the use and operation of such Unit"; (iv) Defendants have refused to permit H19 to inspect the Vehicle in violation of Paragraph 21(i), which states that "[a]t any reasonable time during the term of this Agreement or of the lease of any Unit, Lessor shall have free access and right of inspection of such Unit and the premises where it is kept and maintained"; (v) Defendants 1refused to voluntarily relinquish control of the Units, in violation of Paragraph 16(b), which states that H19 has the right to "without notice to Lessee to

8

take possession of and remove all Units" and "grants Lessor the right to enter any premises on which any Unit may be kept in order to repossess and remove such Unit."

42. In addition, this combination of defaults, as well as other conduct by Defendants, have caused H19 to deem itself "insecure", which is a separate and independent basis for default.

43. H19 has performed all contractual obligations required of it.

44. Defendants have refused to abide by the terms of the parties' contractual agreements and failed to cure the defaults or correct their breaches.

WHEREFORE, H19 demands specific performance of the contractual terms permitting immediate access and repossession of the Units as well as a money judgment in the amount of $64,816.22, plus the additional monetary losses that will be incurred by Plaintiff, including but not limited to any costs associated with repossessing and selling the Vehicle, any deficiency amounts, interest and attorney fees, and for other such relief as this Court deems equitable under the circumstances.

## COUNT II – CLAIM AND DELIVERY

45. H19 incorporates by reference and reasserts here the allegations contained in the above paragraphs.

46. Defendants entered into a Master Lease Agreement in which H19 agreed to lease vehicles to Defendants in exchange for payment.

47. Pursuant to the Master Lease Agreement, H19 is entitled to the possession of the Units. (Ex. A, Lease Agreement at ¶ 16(b) ("If a default by Lessee occurs, Lessor shall have the following rights . . . Lessor shall have the option, without prejudice to other remedies legally available to it and without notice to Lessee to take possession of and remove all Units, with all equipment, instruments and accessories thereon and all repairs thereto, Lessee grants Lessor the right to enter any premises on which any Unit may be kept in order to repossess and remove such Unit.").

48. Defendants have defaulted under the terms of the Master Lease Agreement as set forth in detail above.

49. Defendants are in possession of the Vehicle but have refused to deliver possession of the Vehicle to H19.

50. The parties' contractually agreed to apply Michigan law to any disputes that may arise, as set forth in the Master Lease Agreement.

51. The Vehicle is a specifically-identifiable and independent piece of property and not a portion of divisible property of uniform kind, quality, and value.

52. Defendants continued possession and control of the Vehicle constitutes an unlawful detention of the property under M.C.L. 600.2920 and M.C.R. 3.105.

53. By reason of Defendants numerous defaults, H19 is entitled to immediate possession of the Vehicle.

54. No bond should be required before H19 can take possession of the Vehicle because Defendants agreed that H19 has the right to immediate repossession of the Vehicle, and H19 has sufficient assets to pay any costs or damages if a wrongful order of possession was entered; however, if the Court is inclined to require one, H19 will do so.

55. The total present value of the Units, for purposes of setting any applicable bond and not as an admission of value, is approximately $64,816.22 exclusive of damages that will accrue in the future and exclusive of attorney fees.

WHEREFORE, H19 respectfully requests this Honorable Court order Defendants to immediately relinquish control and possession of the Units, plus any related documentation including but not limited to titles and location information, to H19, and if necessary, order the applicable sheriff to seize and deliver, or assist in the seizing and delivery of the Units to H19, and permitting H19 to move, acquire, sell, and dispose of the Vehicles without further order of the Court; as well as award attorney fees and costs incurred in connection with this matter, and grant any such other relief as this Court deems just and proper.

**COUNT III – ACTION ON OPEN ACCOUNT/ACCOUNT STATED**

56. H19 incorporates by reference and reasserts here the allegations contained in the above paragraphs.

57. Defendants entered into a Master Lease Agreement in which H19

agreed to lease vehicles to Defendants in exchange for payment.

58. It undisputed that Defendants are contractually bound to repay the sums owed to H19 under the Master Lease Agreement.

59. The amount presently due and owing for the Vehicle leased to Defendants is $64,816.22, exclusive of damages that will accrue in the future and exclusive of attorney fees. (Declaration of Buddy Beaman).

60. H19 sent Defendants multiple demands for payment that were owed to H19; as a result, an account has been stated between the parties under M.C.L. § 600.2145.

61. Defendants have refused to pay the sums due and owing to H19.

62. An affidavit of the current amount due with a copy of the stated account attached thereto is attached hereto as Exhibit A and incorporated herein by reference pursuant to the provision of the Account Stated Statute, M.C.L. § 600.2145.

WHEREFORE, H19 demands a money judgment in the amount of $64,816.22, plus any additional monetary losses that will be incurred by Plaintiff, including but not limited to any costs associated with repossessing and selling the Vehicle, and attorney fees, and for other such relief as this Court deems equitable under the circumstances.

### COUNT IV – PROMISSORY ESTOPPEL (in the alternative)

63. H19 incorporates by reference and reasserts here the allegations

contained in the above paragraphs.

64. Defendants made clear and unequivocal promises that they would remit payment to H19 in exchange for the vehicles.

65. H19 provided the vehicles with the understanding, and in reliance upon, the clear and unequivocal promises by Defendants that they would remit payment for use of the vehicles, and that any prior dealings and contracts with predecessor companies and/or affiliated companies would be honored.

66. H19 relied upon these promises by the Defendants to their detriment.

67. Defendants have failed to remit payment for the vehicles and are now holding the vehicles and refusing to relinquish control.

68. H19 has suffered financial losses due to Defendants' refusal to honor the clear and unequivocal promises made.

WHEREFORE, H19 demands the equitable remedy of specific performance of the contractual terms permitting immediate access and repossession of the Vehicle as well as a money judgment in the amount of $64,816.22, plus the additional monetary losses that will be incurred by Plaintiff, including but not limited to any costs associated with repossessing and selling the Vehicle, any deficiency amounts, interest and attorney fees, and for other such relief as this Court deems equitable under the circumstances.

CLARKHILL\K4788\426193\264275646.v1-10/5/21

## COUNT V – UNJUST ENRICHMENT (in the alternative)

69. H19 incorporates by reference and reasserts here the allegations contained in the above paragraphs.

70. Defendants have the Vehicle in their possession but Defendants have not, and cannot, afford to make the payments to H19.

71. Despite being unable to pay for the vehicles, Defendants continue to possess them.

72. H19 has suffered significant financial losses as a result of Defendants conduct and Defendants have been unjustly enriched at the expense of H19.

WHEREFORE, H19 demands immediate access and repossession of the Units as well as a money judgment in the amount of $64,816.22, plus the additional monetary losses that will be incurred by Plaintiff, including but not limited to any costs associated with repossessing and selling the Units, any deficiency amounts, interest and attorney fees, and for other such relief as this Court deems equitable under the circumstances.

## COUNT VI - CONVERSION

73. H19 incorporates by reference and reasserts here the allegations contained in the above paragraphs.

74. H19 is the title owner of the Vehicle.

75. The Vehicle is the property of H19 but are currently in the possession

of Defendants.

76. Defendants have no ownership interest in the vehicles and have failed to return them.

77. Defendants have intentionally converted the vehicles for their own use.

78. Defendants continued possession of the vehicles is inconsistent with H19's ownership rights and constitutes wrongful conversion of property.

79. Defendants' conversion of the vehicles constitutes common law conversion as well as statutory conversion pursuant to M.C.L. 600.2919a.

WHEREFORE, H19 respectfully request this Court enter judgment in the amount of $64,816.22, plus any treble damages, as well as attorney fees, interest and costs incurred in this lawsuit, and any other relief this Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff, H19, Inc., demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

Date: October 15, 2021    By: */s/ Jennifer K. Green*
CLARK HILL PLC
Jennifer K. Green (P69019)
151 S. Old Woodward Ave., Suite 200
Birmingham, MI 48009
(248) 988-2315
jgreen@clarkhill.com
*Attorney for Plaintiff*